**FILED**

IN THE UNITED STATES
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA, FLORIDA
June 23, 2016

THE UNITED STATES OF AMERICA,
ex rel. CASSIDY ABBOTT ORR,
ANNE MARIE BALKE, and
DR. NAGY FARAG,

CASE NO.: 5:16-cv-270-oc-30PRL

Plaintiffs/Relators,

FILED UNDER SEAL
PURSUANT TO 31 U.S.C. §3730(b)(2)
DO NOT ENTER ON PACER OR ANY
PUBLICLY ACCESSIBLE SYSTEM

v.

EIHAB H. TAWFIK, M.D., P.A.,
d/b/a CHRIST MEDICAL CENTER,
a Florida Profit Corporation,

Defendant.

---

# AMENDED QUI TAM COMPLAINT

---

RELATORS CASSIDY ABBOTT ORR, ANNE MARIE BALKE, and DR. NAGY FARAG ("Relators")[1] bring this qui tam action in the name of the United States of America, by and through their undersigned attorneys, Jay P. Lechner and Jason M. Melton, and alleges as follows:

## SUMMARY INTRODUCTION

1.  This is an action by qui tam Relators Cassidy Abbott Orr, Ann Marie Balke and Dr. Nagy Farag, on behalf of the United States of America, against Defendant Eihab H. Tawfik, M.D., P.A., d/b/a Christ Medical Center ("Christ Medical Center"), to recover penalties and damages arising from Christ Medical Center's systematic practice of fraudulent billing practices resulting in the ongoing submission of false statements to

---

[1] The Complaint is Amended to add Ann Marie Balke and Dr. Nagy Farag as relators.

the United States of America relating to, *inter alia*, knowingly billing Medicare and Medicaid for medically unnecessary medical tests and services, billing for medical visits, tests and imaging when no doctor or medical provider actually visited with the patient, excessive and unlawful prescribing of narcotics and other controlled substances, knowingly billing for services not performed where no health care services actually were provided to the patient and other fraudulent practices. The fraud is systemic within the entire company by virtue of actions of leadership and the de facto policies and procedures. Relator Abbott-Orr worked as the advanced practice registered nurse ("APRN") to practice medicine for Christ Medical Center. Relator Dr. Nagy Farag is a medical doctor who practiced medicine for Christ Medical Center. Relator Anne Marie Balke is President of a medical management services company that contracted with Christ Medical Center to provide management and administrative services thereto. As such, Relators were privy to, and each Relator had a unique perspective on, the systemic fraud giving rise to this action. Relators notified Christ Medical Center's high-level management of the systemic fraud giving rise to this action, but received no substantive response to her complaints. Having received no substantive response to her complaints regarding Christ Medical Center's fraudulent practices, Relators have decided to seek legal redress directed toward the systemic fraud and statutory violations of Christ Medical Center.

## PARTIES

2. Relators are residents of Citrus County, Florida.

3. Defendant, Christ Medical Center, was/is a Florida Profit Corporation authorized to conduct business in the State of Florida.

2

4. At all times material, Christ Medical Center's principal place of business was/is located at 7394 West Gulf to Lake Highway, Crystal River, Florida 34429 in Citrus County, Florida.

5. At all times material, Christ Medical Center operates under the name "Christ Medical Center." "Christ Medical Center" is a fictitious name registered to Defendant.

6. Christ Medical Center is owned by Eihab Tawfik, M.D., who is a licensed physician within the State of Florida, having been issued license number ME 93322.

7. Relator Abbott-Orr is an advanced practice registered nurse ("APRN") with post-graduate education in nursing. Relator Dr. Nagy Farag is a medical doctor who practiced medicine for Christ Medical Center. Relator Anne Marie Balke is President of a medical management services company that contracted with Christ Medical Center to provide management and administrative services thereto.

8. On or about March 19, 2015, Christ Medical Center hired Relator Abbott-Orr as a Nurse Practitioner to engage in the practice of medicine at Christ Medical Center. On October 19, 2015, Christ Medical Center entered into a Management and Administrative Services Agreement with Relator Balke's company, Vanguard Medical Management LLC.

## JURISDICTION & VENUE

9. This action arises under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*

10. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a) (False Claims Act) and 28 U.S.C. §1331 (Federal Question).

11. Venue is proper in this Court pursuant to 31 U.S.C. §3732(a) because: (i) Christ Medical Center's primary place of business is in this district; (ii) Christ Medical Center transacts business in this district and did so at all times relevant to this complaint; and, as averred below, (iii) Christ Medical Center committed acts proscribed by 28 U.S.C. § 3729—acts giving rise to this action—within this district.

12. Before filing this complaint, Relators served a copy of same upon the United States of America, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. §3730(b)(2).

13. Relators have complied with all conditions precedent to bring this action.

14. Relators are the original source of, and have direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government before filing this action. Specific disclosures include:

**(ALL EXHIBITS ATTACHED HERETO)**

**FACTUAL ALLEGATIONS**

15. Christ Medical Center's services include internal medicine, family practice, urgent care/walk-in clinic, Citrus Diabetes Treatment Center, Physicians Weight Loss, full imaging services (MRI/CT/PET/Nuclear/Digital X-Ray & Mammography), bone density scans, pain management and lab work.

16. Christ Medical Center also owns and operates a facility at 411 West New England Ave., Winter Park, Florida, which provides medical, pain management, and radiology services in addition to microdermabrasion, laser treatments, botox injections

weight loss (including appetite suppressant prescriptions) through its "Joy Medical Spa." During the relevant time period, Christ Medical Center also operated a facility in Spring Hill, Florida.

17. Christ Medical Center accepts Medicare assignments and regularly submits claims to the Medicare and Medicaid programs. Its group PAC ID is 0648284919.

## Medically Unnecessary Medical Tests and Services

18. Christ Medical Center engaged in a pattern and practice of knowingly submitting false claims to the Medicare and Medicaid programs for medically unnecessary medical tests and services.

19. Medical assistants at Christ Medical Center are/were paid bonuses based on the number of tests, lab work and/or imaging the patients were billed for, regardless of whether such tests, lab work or imaging were medically necessary. They also are/were paid bonuses based on the number of braces and similar equipment prescribed to patients, regardless of need.

20. Christ Medical Center's Billing Manager, Teresa Johnson, has at least one previous felony conviction for fraud.

21. Prior to visiting each patient, a medical provider at Christ Medical Center is provided a list of pre-selected tests and/or imaging that must be ordered for the patient, even if the tests are medically unnecessary and/or unrelated to the medical condition of the patient. **[See Exhibit 1]** This list is pre-prepared by the medical assistants prior to the patients arriving at the facility and before the medical provider ever sees the patient.

22. All tests and imaging is performed in house, preventing an independent third party form assessing the results and/or their medical necessity.

23. Relators Abbott-Orr, Balke and Farig objected to these practices and refused to order the pre-selected tests, unless needed and only after she actually saw the patient.

24. Christ Medical Center maintains a chart for each patient that shows what tests the patient has done and which ones still need to be scheduled. **[See Exhibit 2]** The purpose of these documents is to ensure all the tests are ordered for each patient, whether needed or not. The last two pages of Exhibit 2 reflect the Cheat Sheet the medical assistants used in order to fill this out and order unnecessary tests.

25. Regularly, after Relator Abbott-Orr would see a patient, Christ Medical Center employees would – in order to increase the billing – add tests and give the scripts for the tests to the patient as they walked out, even though these additional tests were never ordered by Relator and were medically unnecessary.

26. For example, Relator Abbott-Orr recalls one instance when a patient had knee pain, yet Christ Medical Center tried to send the patient for Carotid and Thyroid tests (ultrasound) for no reason. It is completely unnecessary for someone with knee pain to have his thyroid tested.

27. On another occasion, a patient's caregiver called and complained that she had never seen so many unnecessary tests and x-rays "for no reason," and "giving her shots in her neck for pain when she has no pain." The patient's record indicated that she had seen Relator, but Relator never saw this patient. **[See Exhibit 3]**

6

28. It the practice of Christ Medical Center to order multiple tests, all on his own equipment. Many patients who walk in the door are sent internally for multiple unnecessary tests, such as immunology testing, which includes a lengthy and costly process of serum mixing and testing and return visits. Christ Medical Center employees are not properly licensed or certified for serum mixing.

29. By way of example, Christ Medical Center puts patients on insulin when not necessary, so they will qualify for various paid testing. In addition, Christ Medical Center has a program it calls a "Weight Loss" program, but really is a means to prescribe controlled substances such as Phendimetrazine to patients, while not providing any actual weight loss program to the patient and even when patients do not need or want Phendimetrazine. Other examples are reflected in **Composite Exhibit 4**.

30. Christ Medical Center often will waive deductibles in order to be able to charge insurance, Medicare or Medicaid.

### Billing For Doctor Visits When No Doctor Visited With The Patient

31. Christ Medical Center bills Medicare and Medicaid for doctor visits when no doctor actually sees the patient. Christ Medical Center utilizes "special study sheets" which are given to the employees, who are told to put orders in under a provider without the provider's approval.

32. Frequently, Relators Abbott-Orr and Farag observed reports listing patients she purportedly had seen during the previous week, when in fact many of the individuals identified had never been seen by her. For example, with respect to the attached **Exhibit 5**, the individuals with the handwritten check marks are patients she actually saw, whereas the names with line through them, she did not see. It is believed

that the Christ Medical Center employees ordered tests and wrote the scripts for the tests for these patients without input from medical providers. Other examples are reflected in **Exhibit 6**, including:

- **Ex. 6a** Reflecting a patient Relator Abbott-Orr did not see and reflecting unnecessary tests and billing she did not order.
- **Ex. 6b** Reflecting a patient Relator Abbott-Orr did not see, as she was off of work this day.
- **Ex. 6c** Reflects patients Relator Abbott-Orr did not see and for whom she did not read the radiology reports

33. Indeed, Christ Medical Center assigned an outrageous number of patients per day to each doctor (60+ or more for one provider in an eight-hour period), including Relators Abbott-Orr and Farag, making it impossible for the doctors to actually see all patients assigned to them. Relator Abbott-Orr maintained the Sheets attached hereto as **Exhibit 7** so she knew what she DID order as she saw each patient, which could be compared to the final patient chart to demonstrate all other unnecessary tests that were ordered or prescribed after the fact by others.

## Unlawful Conduct Regarding Narcotics and Controlled Substances

34. Citrus County prescription rates for controlled substances and opioids is amongst the highest in the state of Florida. Concomitantly, Citrus County has one of the highest rates of drug overdose deaths in the state.

35. Christ Medical Center regularly prescribes narcotics and other controlled substances that were not medically necessary.

36. Christ Medical Center provided medical assistants with blank prescription

pads, with the blank pages containing the signature of Eihab Tawfik, M.D. Christ Medical Center encouraged the employees to write scripts without input from a medical provider, including scripts for narcotics and other controlled substances. **[Exhibit 8]**

37. Eihab Tawfik's mother, who acted as manager of Christ Medical Center, walked around with a prescription pad, writing prescriptions for controlled substances despite not being a doctor or medical provider.

38. For example, **Exhibit 9** reflects a patient who came to the facility seeking Xanax, a controlled substance for anxiety, after being sent out for an MRI. The document states that the patient visited with Relator Abbott-Orr and that Relator prescribed her Xanax. However, in fact, the Relator Abbott-Orr did NOT see this patient, did not prescribe her Xanax and did not electronically sign the document.

39. When patients seeking prescriptions for narcotics would come to the walk-in clinic at Christ Medical Center, these patients were required to first undergo a full set of tests, which were unrelated to their symptoms. These tests were medically unnecessary but were prescribed solely to bill insurance, Medicare or Medicaid. The patients then were rewarded for their cooperation by receiving prescriptions for excessive quantities of controlled substances.

40. On Fridays, the clinic closed at noon. **Exhibit 10** reflects that, on this date, exactly at noon, twelve (12) patients had narcotics/controlled substances prescribed, even though it would be impossible for that many patients to be seen at that time.

41. Christ Medical Center's practice of prescribing excessive quantities of narcotics and other controlled substances also included filling scripts too early, and

doubling up, causing harm and death to patients. **[See Exhibit 11]**

42. Drug screens would come back positive for controlled substances (or negative for the drugs they were supposed to take but were selling), yet Christ Medical Center would still give these individuals controlled substances. **[See Exhibit 12]**

43. Some patients have died as a result of overdoses from controlled substances prescribed by Christ Medical Center. In such instances, Christ Medical Center accesses the patient's electronic records, including the record of the patient's final visit, and revises or deletes any inculpatory information in order to protect itself from fault and/or liability.

44. There is extremely high turnover at Christ Medical Center due to the rampant fraud. Witnesses who objected to this fraudulent and illegal conduct and are willing to assist in this case include, but are not limited to, Anne Marie Balke, Dr. Nagy Farag and Briana Harrison.

## Upcoding

45. Christ Medical Center also engages in upcoding, which results in fraudulent billing to Medicare and Medicaid. For example, **Exhibit 13** shows instances where Relator Abbott-Orr saw a patient but later the CPT codes were altered for purposes of increased reimbursement, or instances where Relator Abbott-Orr did not see the patient but Christ Medical Center then billed for a checkup with CPT code reimbursement.

46. Christ Medical Center instructs providers to try to get at least Level 4 codes out of most patient visits, even when they involve nothing more than a simple injection or Level 2 procedure. **Exhibit 14** reflects patient billing forms on which Christ

Medical Center employees would – after the fact – add billing codes that were not appropriate for the patient, showing improper upcoming.

### Other Fraudulent and Wrongful Conduct

47.     Christ Medical Center engaged in other fraudulent billing practices. One practice consisted of Christ Medical Center ordering MIC (B12) shots through one patient (e.g., Jane Doe 001) because her insurance or Medicare/Medicaid would cover it and pay for it (but Jane Doe 001 did not need the shot). Christ Medical Center then would give the shot that Jane Doe 001 paid for to another patient (e.g., Jane Doe 002), the patient who needed it but whose insurance would not cover the injection.

48.     Christ Medical Center billed patients for procedures that they never received. For example, a common scam was referring patients for "Sleep Studies," through a division owned and operated by Christ Medical Center. Patients would go for the study, get billed for it, but never get the results or any of the items they needed, which is harmful to the patient. **[See Exhibit 15]**

49.     Christ Medical Center performed unnecessary and improper dermatologic procedures, including liquid nitrogen procedures for removal of skin tags. Indeed, in November 2015, the Florida Department of Health entered an order prohibiting Eihab Tawfik, M.D. from performing dermatologic procedures. *Dep't of Health v. Eihab Tawfik, M.D.*, Nos. 2011-13490, 2011-18537 (Fla. DOH Nov. 13, 2015). Christ Medical Center continues to perform dermatologic procedures, and Dr. Tawfik continues to oversee dermatologic procedures (including at Joy Medical Spa) in violation of the Florida Department of Health order by placing the signature of other doctors on the documentation. **[See Exhibit 16]**

50. During their employment, Relators Abbott-Orr and Farag objected to, and provided information to Christ Medical Center about, these unlawful practices, both verbally and in writing. **[See Exhibit 17]** Yet, Christ Medical Center continued these fraudulent practices and, in retaliation, terminated her employment.

## COUNT I: Violations of the False Claims Act

51. The Relators hereby adopt and re-allege each and every allegation in paragraph 1-50 above.

52. As described in this Qui Tam Complaint, Defendant Eihab H. Tawfik, M.D., P.A., by and through its officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States of America Government, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and (iii) knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to return Federal Funds no longer entitled to the Government.

53. Defendant Eihab H. Tawfik, M.D., P.A. authorized and ratified all the violations of the False Claims Act committed by its various officers, agents, and employees.

54. The fraud committed by Eihab H. Tawfik, M.D., P.A. is systematic by virtue of the actions of leadership and the de facto policies and procedures of Eihab H. Tawfik, M.D., P.A..

55. The United States of America Government and the public fisc have been damaged as a result of Defendant Eihab H. Tawfik, M.D., P.A.'s violations of the False

Claims Act.

WHEREFORE, Relators Cassidy Abbott Orr, Anne Marie Balke and Dr. Nagy Farag on behalf of themselves and the United States of America Government, pray:

(i) That this Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States of America has sustained as a result of Defendant's violations of the False Claims Act;

(ii) That this Court enter a judgment against Defendant for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) That Relators recover all costs of this action, with interest, including the cost to the United States of America Government for its expenses related to this action;

(iv) That Realtors be awarded all reasonable attorneys' fees in bringing this action;

(v) That in the event the United States of America Government proceeds with this action, Relators be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) That in the event the United States of America Government does not proceed with this action, Relators be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) That Relators be awarded pre judgment interest;

(viii) That a trial by jury be held on all issues so triable; and

(ix) That Relators and the United States of America receive all relief to which either or both may be entitled at law or in equity.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

**DATED** this 22d day of June, 2016.

                        Respectfully submitted,
                        WHITTEL & MELTON, LLC

                        /s/Jay P. Lechner
                        Jay P. Lechner, Esq.
                        Florida Bar No.: 0504351
                        Jason M. Melton, Esq.
                        Florida Bar No.: 605034
                        One Progress Plaza
                        200 Central Avenue, #400
                        St. Petersburg, Florida 33701
                        Telephone: (727) 822-1111
                        Facsimile: (727) 898-2001
                        Service Email:
                            Pleadings@theFLlawfirm.com
                            lechnerj@theFLlawfirm.com
                            daveyard@theFLlawfirm.com
                        Attorneys for Relator

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2016 a true and correct copy of the foregoing Qui Tam Complaint and attached disclosures by Federal Express overnight to: **A. Lee Bentley, III, Esq.**, United States of America Attorney, United States of America Attorney's Office, 400 N. Tampa Street, Ste. 3200, Tampa, FL 33602, and **Loretta E. Lynch**, United States of America Attorney General, Dept. of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-001.

                        /s/Jay P. Lechner
                        Jay P. Lechner

## SCHEDULE OF EXHIBITS

| Exhibit "1" | List prepared by MAs of pre-selected tests, lab work or imaging for each patient |
|---|---|
| Exhibit "2" | Charts maintained for patients reflecting tests, lab work and imaging already billed for each patient and which tests, lab work and imaging still needed to be performed |
| Exhibit "3" | Patient record reflecting that patient had seen Relator, when Relator never saw this patient |
| Exhibit "4" | Other documents evidencing unnecessary and excessive billing |
| Exhibit "5" | Records reflecting visits billed to patient when no medical provider actually saw the patient |
| Exhibit "6" | Specific records reflecting visits and testing billed to patient when no medical provider actually saw the patient |
| Exhibit "7" | Records kept by Relator indicating what she actually ordered for patients, as opposed to what was reported |
| Exhibit "8" | Blank prescription pads provided to medical assistants, with the blank pages containing the signature of Eihab Tawfik, M.D |
| Exhibit "9" | Records reflecting controlled substances prescribed, and visit billed, to patient when Relator never saw the patient |
| Exhibit "10" | Record reflecting sudden prescription of narcotics/controlled substances to twelve (12) patients at closing time |
| Exhibit "11" | Records reflecting practice of filling scripts for narcotics too early, and doubling up |
| Exhibit "12" | Records reflecting prescription of narcotics/controlled substances despite drug screens coming back positive for controlled substances |
| Exhibit "13" | Records showing instances where Relator saw a patient but later the CPT codes were altered for purposes of increased reimbursement |
| Exhibit "14" | Records reflecting patient billing forms on which Christ Medical Center employees would – after the fact – add billing codes that were not appropriate for the patient |
| Exhibit "15" | Records reflecting fraudulent billing for "sleep studies" |
| Exhibit "16" | Documents from *Dep't of Health v. Eihab Tawfik, M.D.*, Nos. 2011-13490, 2011-18537 (Fla. DOH Nov. 13, 2015) |
| Exhibit "17" | Relator's complaint emails |